L. L. CADWALLADER, ASSIGNEE

*vs.*

CLIFTON R. SHAW, INC.

Kennebec.    Opinion June 5, 1928.

*James L. Boyle*, for plaintiff.
*F. Harold Dubord*,
*Roy Sturgis*, for defendant.

SITTING: WILSON, C. J., PHILBROOK, DUNN, DEASY, STURGIS, BARNES, BASSETT, PATTANGALL, JJ.

PHILBROOK, J. This is an action of trover. The parties raise no question as to the pleadings and agree that demand was made and refusal had.

The case comes before this court on report based upon an agreed statement of facts, together with the stipulation that if the plaintiff is entitled to judgment the same shall be entered in the sum of $300, otherwise judgment for the defendant, with costs in either instance.

The agreed statement of facts discloses the following. Plaintiff is the common-law assignee of Albert Violette, of Waterville, Maine. Defendant is a corporation, dealing in automobiles, with establishments in Portland and Lewiston, in said state. In January, 1926, Violette, a contractor and builder, was in serious financial difficulties and could not complete his contracts. He called a meeting of several of his creditors and at his request these creditors appointed the plaintiff as the person who should take an assignment of all his goods, property and contracts. On the

174

twenty-third day of January, 1926, Violette executed this assign-
ment to Cadwallader, and an attached exhibit shows that all real
and personal property and rights and credits of Violette were
assigned. The assignment was delivered on or about the first day
of February, 1926, and the assignee then received and took pos-
session of all the property of Violette, including the automobile in
question, although the same was not specifically mentioned or de-
scribed in the assignment. This written transfer of title and in-
terest was recorded in the office of the City Clerk in the city of
Waterville on February 8, 1926, and was recorded in the Kennebec
Registry of Deeds February 10, 1926.

In the late spring or early summer of 1926 Violette, while en-
deavoring to gain a livelihood by the sale of some form of mer-
chandise which required him to go beyond the limits of the City of
Waterville, approached Mr. Cadwallader with the request that the
latter grant him the use of the automobile which had been taken
over by the assignment. Between the parties it was understood
that Violette could have the car for a few days only but the same
must be returned soon as there were several prospective purchasers
interested in it. Cadwallader gave Violette the necessary fees to
have the car registered in his (Cadwallader's) name, but instead
of doing so Violette had the car registered in his own name, used
it for a time, and on July 1 went to the defendant company, at its
Lewiston Branch, advised them that he was from Waterville,
Maine, was engaged as a travelling salesman, and desired to ex-
change this car for another one, giving references to reliable per-
sons in Lewiston who were well known as·such to the defendant
company.

On the strength of these references to people in Lewiston, with-
out making any inquiries in Waterville or in Kennebec County, or
examining any public records in Waterville or in Kennebec County,
defendant purchased the car from Violette, in exchange gave him
another one, and in due course of trade sold to other parties the
car thus bought from Violette.

Shortly after that, when Cadwallader endeavored to locate Vio-
lette, and the automobile in question, he ascertained that the lat-
ter had sold the car to the defendant and left for parts unknown.

When the plaintiff made demand upon the defendant for the car

he was advised that it had been sold in the regular course of trade, that relying upon the Lewiston references given by Violette they considered him the rightful owner of the car, and as a consequence could not deliver the car to the plaintiff and refused to pay the value thereof. After making further demands on the defendant this action was instituted.

At the outset the plaintiff claims that these records made in Waterville and Kennebec County were "notice to the world" of the fact of assignment, and the right, title and interest arising therefrom, and that the defendant was bound by notice given by the record. The defendant claims that it is a bona fide purchaser for value, without notice, and that the record of the assignment in the city clerk's office in Waterville or the Kennebec Registry of Deeds, constituted no notice to it.

*Constructive notice by record.* We here observe that a debtor may make an assignment of his property for the benefit of his creditors under bankruptcy laws, insolvency laws, common-law authority, or statutory authority. Constructive notice of such assignment depends upon the course pursued in making the same. Prior to 1878, as shown by R.S. 1871, Chap. 70, we had provisions for a statutory assignment for the benefit of creditors. Constructive notice under that statute was effective by having the assignee, within ten days after the execution of the assignment, file an attested copy of the same, and a certain inventory, in the probate office. When the so-called insolvency law came into being, Chap. 74, P.L. 1878, it repealed the statutory assignment law of 1871, *Lewis* v. *Latner*, 72 Me., 487; *Pleasant Hill Cemetery* v. *Davis*, 76 Me., 289; *Rowell* v. *Lewis*, 95 Me., 83. The case at bar does not come under any provision as to constructive notice arising from the National Bankruptcy Act, and the State Insolvency Law is superseded by the Bankruptcy Law so far as the person and subject matter falls within the provisions of the bankrupt act, *Littlefield* v. *Gay*, 96 Me., 422. The record provided by R. S. Chap. 114, Sec. 8, has no application to this case. *Thomas* v. *Parson*, 87 Me., 203; *Manufacturing Co.* v. *Brooks*, 95 Me., 146.

The place of record of mortgages of personal property, and their validity as to third parties arising from such record, are shown by R.S. Chap. 96, Sec. 1. The object to be obtained by

requiring the record of mortgages of personal property is the same as that in providing for the registration of mortgages of real estate. The same general principles are alike applicable in each case. The design is to give notice to the public of all existing incumbrances upon real or personal estate by mortgage. *Griffith* v. *Douglass*, 73 Me., 534. But the instrument executed by the assignor to the assignee in the case at bar is not a chattel mortgage and as to it, therefore, provisions for the record of chattel mortgages are not applicable.

When an instrument is not entitled by law to be recorded, placing it on record cannot operate as constructive notice, *Glenn* v. *Davis*, 35 Md., 208, 6 Am. Rep., 289.

Where parties have desired to give as much publicity as possible to the fact of the transfers of property to themselves, and in seeking to give such publicity may have selected the filing of the instrument of transfer for record in one of the principal offices of the county as a means thereto, they did not thereby create a new law in respect to notice. Parties in interest have a right to rely upon the law of the state as enacted by its legislature and are not bound by any constructive notice other than such laws provide. Actual notice must be given in the absence of a statute providing some means for constructive notice. *Burck* v. *Taylor*, 152 U. S., 634; 132 A. S. R., 412.

It is therefore plain, since there is no provision requiring or providing for record of this assignment under the common law, or by statute in this State, that the record made in the case at bar has no effect upon the rights, liabilities or protection of third parties which would arise under the provisions for a record of mortgages of personal property. The first claim of the plaintiff that the record made in city clerk's or register of deed's office, was "notice to the world" cannot be sustained.

Since defendant claims that it is a bona fide purchaser of the automobile for value and without notice of defect in title we deem it proper to discuss the effect of registration of motor vehicles in the office of the Secretary of State and whether such record is evidence of ownership or title.

Courts of last resort are not in complete harmony upon this proposition but their differences in most cases arise from the terms

regarding registration used in the statutes of their respective states. In some states, in order to register a car, the applicant must be the actual owner thereof. It is not so in other states. In our state application for registration of a motor vehicle, made to the Secretary of State upon blanks prepared by him under statutory authority, do not restrict the application to the owner of the vehicle, for the application for registration furnished by him declares that the motor vehicle thus registered "is owned or controlled by the applicant."

The General Laws of Massachusetts, Ed. 1921, Chap. 90, Sec. 2, declare that "application for the registration of motor vehicles and trailers may be made by the owner thereof."

In *Temple* v. *M. & B. St. Railway Co.*, 241 Mass., 124, although recognizing that application for registration of a motor vehicle must be made by the owner thereof, the court interprets the word "owner" as including "not only persons in whom the legal title is vested but bailees, mortgagees in possession, and vendees under conditional contracts of sale, who have acquired a special property which confers ownership as between them and the general public for the purposes of registration." See also *Downey* v. *Bay State St. Railway*, 225 Mass., 281; *Hurnanen* v. *Nicksa*, 228 Mass., 346.

In *Brown* v. *New Haven Taxi Cab Co.*, 102 Atl., 573, the Supreme Court of Errors of Connecticut held that the word "owner" is often used to designate the person having an interest in property under a special title, and was so used by the statute of that state in provisions relating to motor vehicles. In that case the court further held that the word had different meanings and must have its proper significance in each case in view of the subject, the object, and the provisions of the statute in which it is found; hence a bailor may have a general ownership and a bailee a special ownership in the subject of the bailment.

In the *Downey Case*, supra, Mr. Justice Braley called attention to the earlier statute providing for registration of motor vehicles which could be done by the owner or "person in control thereof," and in that connection said, "The words 'person in control thereof' found in the earlier enactments, obviously embrace a class of persons who may have no general or special property in

the motor vehicle they are operating while the word 'owner' includes not only persons in whom the legal title is vested but bailees, mortgagees in possession, and vendees under conditional contracts of sale who have acquired a special property which confers ownership as between them and the general public for the purposes of registration."

But in *Windham* v. *Newton*, 76 So., 24, the Supreme Court of Alabama said, "The fact, if it was a fact, that defendant applied for a license to operate an automobile, was a circumstance to which the jury might look in determining the fact of ownership."

In some states it has been held that registration of a motor vehicle in the name of a given person raises a presumption that he is the owner of the machine, *Patterson* v. *Millican*, 66 So., 914.

Under the statutes of Minnesota, Gen. St. 1913, Sec. 2643, registration is prima facie evidence of ownership. *Uphoff* v. *McCormick*, 166 N. W. (Minn.), 788.

In *Hatter* v. *Dodge Bros.*, 167 N. W., 935, the Michigan court held that proof of a license number upon an automobile, and of the person in whose name such registration occurs, is prima facie evidence identifying both the vehicle and the owner.

In *Farris* v. *Sterling*, 214 N. Y., 249 ;108 N. E., 406, it was held that the license number of a car, coupled with the evidence that the defendant held the license, was prima facie proof that the defendant was the owner.

But these expressions of the court arose in negligence cases, where the plaintiff was obliged to prove ownership of a car by the defendant. None of them attempt to establish a rule that registration of an automobile, in the office of the registrar, is constructive notice "to all the world" as to the true ownership of the car. In view of the provisions of our own statute, as to registration of automobiles by "an applicant" we hold that such registration does not constitute constructive notice as to ownership.

It follows that the defendant had no constructive notice, and no actual notice is claimed, as to title or ownership of the car concerned in this action.

The record fully discloses the fact that the defendant purchased the car for value, the fitness of which is not denied.

Was the defendant a bona fide purchaser, as well as for value and without notice?

The term "bona fide purchaser" means a purchaser in good faith without notice and for a valuable consideration. Words & Phrases, Vol. 1, Page 825, and cases there cited.

A bona fide purchaser is one who at the time of his purchase advances a new consideration, surrenders some security, or does some other act which leaves him in a worse position if his purchase should be set aside, and purchases in the honest belief that his vendor had a right to sell, without notice, actual or constructive, of any adverse rights, claims, interests, or equities of others in or to the property sold. The essential elements which constitute a bona fide purchaser are a valuable consideration, the absence of notice, and the presence of good faith, Words & Phrases, Vol. 1, Page 825. To constitute good faith there must be an absence, not alone of participation in the fraud or collusion with the vendee, but also the knowledge or even notice of the fraud, or of facts and circumstances, calculated to put an ordinary prudent man on inquiry so that he would ascertain the truth, *Wafer* v. *Harvey County Bank*, 46 Kan., 597, 26 Pac., 1032. Under these rules we think that the record of the case fully establishes the fact that the defendant was a bona fide purchaser.

*The Validity of Sale.* But the plaintiff claims that the only question necessary for decision is the validity of the sale to the defendant company; that is to say, could and did the defendant acquire title or right to possession from Violette, or could Violette sell or give title to an article he did not own.

When the automobile was loaned by the plaintiff to Violette there arose, as to these parties, a relationship of bailor and bailee. Reduced to more exact terminology, therefore, the question to be here considered, as plaintiff claims, is whether under any circumstances a bailee, while in possession of the bailed property, can convey title to an innocent purchaser, without notice, and for a valuable consideration.

It is well settled, as a general rule, that one having possession of personal property as a bailee can give no title thereof to a purchaser, although the latter acts in good faith, parts with value, and is without notice of the want of title in his seller. The mere

possession of chattels, by whatever means acquired, if there is no other evidence of property, or authority to sell from a true owner, will not enable the possessor to give a good title. So long as the possession of the goods is not accompanied with some indicia of ownership, or of right to sell, the possessor has no more power to divest the owner of his title, or to affect it, than a mere thief, 24 R. C. L., 375-6.

In addition to the common-law rule just above stated we should also observe that under the so-called Uniform Sales Act, P. L. 1923, Chap. 191, Sec. 23, statutory enactment has also added to the law these terms:

"Subject to the provisions of this act, where goods are sold by a person who is not the owner thereof and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell."

This raises the question whether in the case at bar the defendant may invoke estoppel against the plaintiff in his attempt to recover the automobile or its value.

The mere surrender of possession is not sufficient to estop the party surrendering it from subsequently asserting title as against a purchaser from the person to whom possession is surrendered. *Rodliff* v. *Dallinger*, 141 Mass., 1; *Com. Nat. Bank* v. *Bemis*, 177 Mass., 95.

Estoppel arising from any negligence on the part of the one against whom estoppel is claimed cannot avail in the case at bar because, so far as the parties to this case are concerned, it was not an act of negligence for the plaintiff to deliver the automobile to a third party. Title did not pass by so doing nor any authority to convey title. The plaintiff did nothing that the law can regard as sufficient to mislead this purchaser. No purchaser has a right to rely on possession alone as evidence of title and a right to convey.

If it should be urged that the plaintiff was guilty of a breach of trust as to the creditors, yet such breach of trust in no way contributed to mislead this defendant. Hence, unless the breach of trust, if any there were, in some way contributed to mislead the

defendant, other than by the mere possession of the bailee, the defendant was in no way injured by any supposed breach of trust as to the creditors.

It should also be noted that to claim estoppel on the ground of a wrong done that misleads, the party claiming estoppel must also be free from fault, 21 C. J., 1170. So far as the record discloses the defendant saw fit to rely on the possession of the bailee and took no steps even to inquire of his references in the defendant's home town. Such omission on its part to avail itself of references given and its decision to rely entirely on the bailee's word and possession, which omission and reliance were induced by nothing which the plaintiff did, was the cause of its loss.

Moreover, the plaintiff's breach of trust, if any there were, was not the proximate cause of the defendant's loss. The acts of the plaintiff, as assignee, were not such as would permit a bailee to convey title to an innocent purchaser, and the neglect of the defendant to make inquiries, and its reliance on the word of Violette, a stranger to the defendant, were not the acts of a reasonably prudent man.

Hence, it may be stated as a sound principle of law that a breach by a trustee of a duty owing to his cestui affords no ground for precluding the trustee from denying the authority of his bailee to sell property intrusted to him temporarily and for a special purpose.

Other arguments in behalf of the defendant have not been overlooked and the whole record has been given careful and repeated examination by the full court. From the examination of the record and the law governing this case we hold that the mandate must be

*Judgment for plaintiff in the sum of $300 with costs. This mandate also carries interest on the sum just mentioned, reckoned from the date of the writ to the date of the final judgment, the same to be computed and added to the judgment by the clerk of the court below.*