OSBORNE CO. v. BAKER et al.—245 S. W. (2d) 419.

Eastern Section. May 30, 1951.

Petition for Certiorari deniend by Supreme Court, August 31, 1951.

Rainwater & Rainwater, of Dandridge, for appellant.

H. F. Swann, of Dandridge, for appellees.

HOWARD, J.  The Osborne Company, complainant herein, brought this suit to recover for merchandise sold by its agent, Davis, to R. F. Baker, doing business as Baker Motor Company.  From an adverse decree, Baker appeals.

The Osborne Company sells advertising matter, and on June 10, 1949, Davis, its selling agent obtained an order from defendant for a number of ship's wheel clocks.  The order was written on one of complainant's forms, signed by Baker and a carbon copy delivered to him.  With the order Baker gave a check to Davis payable to the Osborne Company for the full amount of the purchase price.  Thereupon Davis marked Baker's copy of the order "Paid in Full".

It appears that before leaving the Baker Motor Company, Davis became interested in a used car, and after negotiations, agreed to buy the car and gave Baker his personal check for $104.75 and endorsed and delivered to him the check which Baker had previously given him payable to The Osborne Company for $241.25, the total of both checks constituting the down payment on the car. Title was taken in the name of Davis, who assured Baker at the time that he had authority to endorse the check payable to The Osborne Company.

On August 16, not having received the merchandise, Baker wrote the Company requesting information as to when he might expect shipment. To this inquiry The Osborne Company replied that the clocks were not scheduled to be shipped until November 1st, but that if shipment was desired earlier they could be shipped within ten days. To this, on August 24th, Baker replied: "At the time I placed this order I advised your agent Mr. Davis that I would like shipment as soon as this order could be made up and for that reason I paid the purchase price in full at that time as is shown by the order."

On September 15th, without further correspondence, the clocks were shipped to Baker and several days thereafter, the exact time not appearing in the record, Baker received an invoice from the Company for the full purchase price, plus tax and postage. On September 24th, he again wrote the Company that he had given Davis his check for payment in full at the time the order was taken, offered to furnish photostatic copy of the check to the Company, and again called attention to his letter of August 24th. In response the Company requested further information as to the payment and stated as follows: "It is true that in your letter of August 24 you told us that you had paid for these clocks at the time you placed

the order, but for some reason or other that letter was not very carefully read, nor do we find that it was answered.''

In the order which Davis sent to the Company, the delivery date is stated as "Nov. 15". Under special instructions there was a direction not to ship before November 1st. These do not appear on the carbon copy left with Baker, but under special instructions there is written "Paid in full". This same notation is also written across the face of the carbon copy. It therefore appears that neither the Company nor Baker had a true copy of the order in the possession of the other.

After further correspondence and upon refusal of Baker to pay, suit was brought on the account and decree rendered in the Company's favor.

█ It is conceded by Baker that a selling agent, without more appearing, has no authority to endorse a check given him payable to his company. Darling Stores v. Trust Co., 178 Tenn. 165, 156 S. W. (2d) 419; Jackson v. Bank, 92 Tenn. 154, 160, 20 S. W. 802, 18 L. R. A. 663. It is insisted, however, that the later acts of the Company amounted to a ratification and estoppel on its part. The appeal is based on these two points.

█ █ The requisites for an estoppel are set out in Rogers v. Colville, 145 Tenn. 650, 238 S. W. 80, 83. One of these elements, as the Court says in that case, is that the party pleading the estoppel "must have been mislead to his injury; that is, he must have suffered a loss of a substantial character, or have been induced to alter his position for the worse in some material respect." This rule was followed in Morristown Furniture Co. v. People's Nat'l. Fire Insurance Co., 149 Tenn. 214, 259 S. W. 539; Church of Christ v. McDonald, 180 Tenn. 86, 171 S. W. (2d) 817, 146 A. L. R. 1173. Baker is not in a position to

insist on this principle because he did not suffer a loss as the result of the letter and acts of the Company in shipping the goods. The check given in payment to The Osborne Company was accepted in payment by Baker before the letter written by the Company, and had the parties been left in that position, Baker would then have only been out the amount of the check represented by the automobile which he had delivered to Davis.

Baker's insistence is that by leading him to believe that the merchandise had been properly paid for he was thereby prejudiced and led into accepting the merchandise. This overlooks the fact that he received the merchandise in return and that his prospective loss was occasioned not by his acceptance of the merchandise after the letter was written, but by his own act in cashing the check with an improper endorsement. It is not shown that he disposed of the merchandise before he received the accompanying statement, and he could have returned it to the Company and thus have relieved himself of its cost had he not been inclined to accept it. Under the circumstances we cannot see how he has suffered a loss (since he received the merchandise) or altered his position for the worse. The plea of estoppel is therefore not good.

In 2 American Jurisprudence, it says:

"The main distinction between ratification and estoppel is that the substance of estoppel is the inducement to another to act to his prejudice, whereas the substance of ratification is confirmation after conduct. Accordingly, liability resulting from ratification is a liability which arises from intention, express or implied; liability resulting from estoppel is liability which results despite intention, because the other party will be prejudiced and defrauded by his conduct unless the law treats the principal as legally bound. It is clear, therefore, that there cannot

be an estoppel without some prejudice; but ratification does not rest upon prejudice. Moreover, while estoppel results merely in liability against the principal, the ratification of a contract by the principal gives rise to affirmative rights against the other party to such agreement." Sec. 214, p. 172.

"* * * no particular form of ratification is ordinarily necessary. In most instances, ratification may be established by parol, and even by implication from the conduct of the purported principal manifesting that he consents to be a party to the transaction or from conduct justifiable only if there is a ratification." Sec. 215, p. 172.

An intention to ratify may be manifested by the principal's acts and statements in the absence of a ratification in express terms. It is sufficient if what is said or written shows such an intention. Bagley & Co. v. Union Buffalo Mills, 9 Tenn. App. 63.

The Osborne Company had a copy of the order in its hands and knowledge that Baker was claiming payment to have been made in full. When it shipped the merchandise, and for some time prior thereto, it was in possession of these facts or was in possession of the means of learning all of the facts after having been put on notice of their existence. It had the means in its possession to determine all of the facts before it acted. It chose to ship the goods under these circumstances. This it seems to us amounted to a ratification of Davis' acts. Williams v. Storm, 46 Tenn. 203; 2 Am. Jur., Sec. 224, p. 179; 2 C. J. S., Agency, Section 42, p. 1081.

It results that the decree of the Chancellor will be reversed and the suit dismissed. Costs will be adjudged against The Osborne Company and its sureties.